UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TOMMY THORN BUSH,

       Petitioner,

v.                                                     Case No. 10-C-66

JOHN A. RICHARDS, Superintendent,

       Respondent.

**DECISION AND ORDER ON PETITION FOR A WRIT OF HABEAS CORPUS**

### I. PROCEDURAL BACKGROUND

On January 26, 2010, the petitioner, Tommy Thorn Bush ("Bush"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, stemming from his 2006 conviction in the Milwaukee County Circuit Court. More precisely, on August 22, 2006, Bush was convicted of delivering less than one gram of cocaine, in violation of Wis. Stat. § 961.41(1)(cm)1g. (2003-04); possessing more than fifteen but less than forty grams of cocaine with intent to deliver as a party to a crime, in violation of Wis. Stat. § 961.41(1m)(cm)3. and Wis. Stat. § 939.05 (2003-04); and being a felon in possession of a firearm, in violation of Wis. Stat. § 941.29(2) (2003-04).

Bush was sentenced to serve four years of initial confinement and three years of extended supervision for the drug delivery count; three years of initial confinement and three years of extended supervision for the drug possession count; and three years of initial confinement and three years of extended supervision for the firearm possession count. (Resp't's Answer Ex. 1, at 1.) The drug delivery sentence was ordered to be consecutive to the other two sentences, which were ordered to be concurrent

with each other. (Resp't's Answer Ex. 1, at 1.)

On November 2, 2007, Bush filed an appeal with the Wisconsin Court of Appeals. (Habeas Pet. 3.) The state public defender appointed counsel to represent Bush on appeal. (Resp't's Answer Ex. 4, at 2.) Appellate counsel filed a no-merit report pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Wis. Stat. § 809.32. (Resp't's Answer Ex. 2.) Appellate counsel provided Bush with a copy of the report, and Bush filed a response. (Resp't's Answer Ex. 3.) Based upon its review of the counsel's submissions and Bush's response, the court of appeals concluded that there would be no arguable merit to any issue that could be raised on appeal. (Resp't's Answer Ex. 4.) Accordingly, on August 12, 2008, the court of appeals summarily affirmed Bush's judgment of conviction. (Rep't's Answer Ex. 4, at 5.)

Bush thereafter filed a petition for review with the Wisconsin Supreme Court. (Resp't's Answer Ex. 5.) On January 13, 2009, the supreme court denied Bush's petition for review. (Resp't's Answer Ex. 6.)

As previously stated, on January 26, 2010, Bush filed his federal habeas corpus petition. In accordance with this court's briefing schedule (as from time-to-time amended), the parties have filed their respective briefs and the issues raised by Bush's petition are now ready for resolution. For the reasons that follow, Bush's petition for a writ of habeas corpus will be denied.

## II. FACTUAL BACKGROUND

The facts that were material to Bush's conviction were summarized by the court of appeals to be as follows:

> A confidential informant working with police arranged to buy cocaine base from Bush. A police officer witnessed the purchase and received the cocaine base from the informant. Bush was arrested shortly thereafter. At the time of the arrest, police took from Bush four twenty-dollar bills that police had first recorded and then given to the confidential informant to make the drug buy. Pursuant to the arrest, police went to Bush's

> listed address. Bush's wife, Cora Seaberry, answered the door. Police testified that Seaberry consented to a search of the house for drugs and weapons. There was no dispute that when police asked Seaberry if Bush kept a weapon in the home, she pulled a handgun from under a pillow on the bed. Police also found mail, both opened and unopened, addressed to Bush. Bush subsequently denied that he lived at the address. Police also recovered more cocaine and a small scale from under a bedroom dresser. Two of Bush's fingerprints were found on the scale.

(Resp't's Answer Ex. 4, 2–3.)

### III. LEGAL STANDARD

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v. Ill. Dept. of Corr.*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.") (quoting *Haas v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990).

The federal courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000). A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses

3

to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997) ("[T]he factual findings of state trial and appellate courts are presumed to be correct unless the defendant rebuts the presumption with clear and convincing evidence.").

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); *see also Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" *McGowan v. Miller*, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). This means that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Although interrelated, courts have discussed exhaustion of state remedies and procedural default as separate issues.

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *U.S. ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1132 (7th Cir. 1990). Procedural default occurs either when a state court has declined to address a federal claim because the petitioner failed to satisfy an independent state procedural requirement, *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991), or when the petitioner fails to present a claim to the state courts at the time, and in the way, required by the state. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996).

Under the doctrine of procedural default, a federal habeas court will not review defaulted claims unless the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50. The petitioner bears the burden of establishing that his procedural default is excused by one of these two exceptions. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991).

To satisfy the cause and prejudice standard, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner must also show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494 (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). To demonstrate that a fundamental miscarriage of justice would result from a refusal to consider the defaulted claims, the petitioner is required to show that he is "actually innocent." *See Bousley v. United States*, 523 U.S. 614, 622 (1998). With the forgoing in mind, the court turns to the petitioner's claims.

5

## IV. DISCUSSION

Before addressing the petitioner's claims directly, there is one preliminary matter to address, i.e., defining precisely the claims that are to be addressed. In his habeas corpus petition, Bush set forth three claims: (1) "Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure"; (2) "Denial of effective assistance of counsel" (stemming from counsel's failure to challenge the legality of the search); and (3) "Denial of effective assistance of counsel" (stemming from counsel's failure to challenge "the search, destruction of evidence, (standing) showing defendant could of challenged the search . . . . Failed also to challenge credibility of the confidential informant. . . . Trial lawyer failed to file motion to suppress firearm and drugs due to illegal search [and] seizure or file a motion to dismiss on the same grounds."

Yet, in his brief filed in support of his petition Bush presents arguments on claims that were clearly not presented in his petition. These additional claims are: (1) insufficient evidence to support a verdict of guilty for possession of a firearm; (2) insufficient evidence to support a verdict of guilty for possession of cocaine with intent to deliver as a party to the crime; (3) ineffective assistance of trial counsel for "[f]ailing to request proper jury instructions or object to improper instructions"; and (4) ineffective assistance of appellate counsel for not "alleging that the defendant's trial counsel had ineffectively represented the defendant."

Rule 2(c) of the Rule Governing Section 2254 Cases in the United States District Courts provides:

(c) **Form**. The petition must:

    (1) specify all the grounds for relief available to the petitioner;
    (2) state the facts supporting each ground;
    (3) state the relief requested;
    (4) be printed, typewritten, or legibly handwritten; and
    (5) be signed under penalty of perjury by the petitioner or by a person

> authorized to sign it for the petitioner under 28 U.S.C. § 2242.

Furthermore, the form petition used by the petitioner expressly stated:

> For this petition, state **every** ground supporting your claim that you are being held in violation of the Constitution, laws, or treaties of the United States. <u>If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

(Habeas Pet. 6.) (Emphasis in original.)

Those claims that were not presented in Bush's habeas corpus petition (and the arguments in support thereof) will not be addressed by this court. Instead, the only claims that will be addressed are those that were set forth in Bush's habeas corpus petition.

That having been said, even if those claims were to be addressed by this court, they would nevertheless not provide a basis for federal habeas corpus relief. The state court of appeals addressed those claims in its decision as follows:

> The first issue addressed by counsel is whether the evidence presented at trial was sufficient to support Bush's convictions. In his response, Bush also raises this issue, arguing that there was insufficient evidence to support the possession-with-intent-to-deliver charge and the gun-possession charge. More specifically, Bush argues that the State failed to show that he had exclusive dominion over the bedroom where the drugs were found. He further argues that his fingerprints on the scale did not establish knowing possession of drugs. In regard to the gun-possession charge, Bush again argues that because he did not have exclusive dominion over the bedroom, the evidence was insufficient to show that he knowingly possessed the weapon.
>
> Our independent review of the record satisfies us that counsel's analysis is correct. A reviewing court must accept the findings of the trier of fact unless the evidence, viewed most favorably to the State and the conviction, is so lacking in probative value and force, that no reasonable trier of fact could have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). Bush was charged with drug possession as a party to a crime. Contrary to Bush's argument, exclusive control of the premises did not need to be shown. In addition, the scale was discovered under the dresser with the drugs, and the jury heard testimony that it was a scale consistent with weighing drugs. The circuit court also properly instructed the jury regarding the degree of control over the premises needed to convict Bush. On the gun-possession charge, the

> jury heard police testimony from which it could reasonably infer that the gun belonged to Bush. There would be no arguable merit to further review as to the adequacy of the evidence produced at trial.

(Resp't's Answer Ex. 4, at 3-4.)

It suffices to say that the state court's treatment of these claims was not either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

*A. Unconstitutional Search and Seizure*

Bush's first claim is that the recovery by law enforcement officers of the firearm, drugs and scale was a product of an unconstitutional search. More precisely, Bush argues that there was no warrant for the search of the house where the evidence was discovered. He also claims that, contrary to the testimony of the law enforcement officers, his wife, Cora Seaberry, did not consent to the search of the house. Indeed, Bush notes that Ms. Seaberry so stated at his sentencing hearing.

The respondent takes issue with Bush's factual assertion, noting that the officers testified at the trial that Ms. Seaberry did in fact consent to the search of the home. The respondent also notes that Ms. Seaberry's statement at Bush's sentencing was not under oath.

At the outset, Bush's first claim would seem (at least at first blush) to run headlong into the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494. Stated another way, "a petitioner cannot obtain collateral relief on a Fourth Amendment claim unless the state

8

courts deprived him of a full and fair opportunity to litigate the claim." *Watson v. Hulick*, 481 F.3d 537, 541 (7th Cir. 2007).

Bush cannot demonstrate that he was deprived of such an opportunity. This is because he never presented his Fourth Amendment claim to the circuit court, to the court of appeals or to the supreme court. Moreover, because he never raised in the state courts the Fourth Amendment claim that he now seeks to present on habeas corpus review, he procedurally defaulted such claim. The procedural default hurdle forbids the federal courts from addressing claims that were not fairly presented to the state court. *U.S. ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1132 (7th Cir. 1990).

Of course, a federal habeas court can review procedurally defaulted claims if the petitioner demonstrates either (1) cause for the procedural default and actual prejudice resulting from the alleged violation of federal law, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-50. Bush has not demonstrated either cause and prejudice or that failure to consider the claim would result in a "fundamental miscarriage of justice."

Having said that, Bush did indeed claim in state court that he received ineffective assistance of counsel. And, reading liberally his appellate brief/response to the no-merit report, it would appear that one of the reasons argued in support of such ineffective assistance claim was that his trial counsel failed to move to suppress the evidence that was seized at Bush's home. (Resp't's Answer Ex. 3, at 20-21.) Such being the case, this court will address Bush's Fourth Amendment claim, but it will do so in the context of addressing Bush's ineffective assistance of counsel claim below.

*B. Ineffective Assistance of Counsel Stemming from Counsel's Failure to File Motion to Suppress*

A petitioner's claim of ineffective assistance of counsel is analyzed under the two-part test described in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To prevail on an ineffective-

9

assistance[-]of-counsel claim under *Strickland*, a petitioner must demonstrate that his counsel's assistance was objectively unreasonable and resulted in a substantial risk of prejudice." *Brown v. Finnan*, 598 F.3d 416, 419 (7th Cir. 2010). Review of an attorney's performance is highly deferential and the attorney is presumed to have advised his client effectively. *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003). However, if the petitioner presents "specific acts or omissions of his counsel that constitute ineffective assistance" then the court will consider "whether these acts or omissions were made outside the wide range of professionally competent assistance." *Id.*

As noted by the respondent in his brief, there is a "double dose" of deference applied to a state court's treatment of an ineffective assistance of counsel claim that is presented in a federal habeas corpus petition. First of all, the Court in *Strickland* held that "[j]udicial scrutiny of counsel's performance must be highly deferential. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." 466 U.S. at 689. Furthermore, with the Antiterrorism and Effective Death Penalty Act ("AEDPA") standard of review, another layer of deference is due–deference to the state's court decision that counsel was not ineffective. On this point the Seventh Circuit has stated: "*Strickland* builds in an element of deference to counsel's choices in conducting the litigation; § 2254(d)(1) adds a layer of respect for a state court's application of the legal standard." *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997).

Of course, the deferential scope of review mandated by AEDPA is only applicable "with respect to any claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Otherwise, a federal habeas court is to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. And so the first issue to resolve is whether the Wisconsin Court of Appeals's treatment of Bush's ineffective assistance of counsel claim, at least to the extent that such claim was predicated on

10

counsel's failure to pursue a motion to suppress, was an "adjudicat[ion] on the merits" of such claim.

As previously stated, Bush's appellate counsel filed a no-merit report with the court of appeals. In that no-merit report appellate counsel stated, among other things, that "any motions which could have been made, specifically the search and seizure of evidence at Cora Seaberry's residence, are waived for purposes of appeal as they were not raised before the trial court." (No-Merit Report at 8-9.) In his response to the no-merit report Bush, under the heading "THE ISSUES THAT WERE WAIVED CAN BE ARGUED UNDER INEFFECTIVE ASSISTANCE OF COUNSEL", Bush stated, in pertinent part,

> With respect to the search and seizure of the evidence at the residence that was occupied by Cora Seaberry, the evidence established at trial clearly showed that Mr. Bush lived at the residence. The State even argued to the jury that Bush lived there in its closing arguments. At the time of Bush['s] arrest, he told the officers that he lived there and that Cora Seaberry, children and other adults occupied the residence. Mr. Bush had standing to challenge the search of the residence.
>
> Under certain circumstances, consent may be given by a third person. The officers may not always take third-party consent to a search at face value, but must consider the surrounding circumstances. Mr. Bush contends that Ms. Seaberry did not have actual or apparent authority to consent to search of the bedroom and that the officers took her consent at face value.
>
> At Mr. Bush['s] sentencing hearing, Ms. Seaberry stated that she did not consent to the search and that the officer tricked her to get in the residence by saying that her husband had gotten into an accident. Whether Ms. Seaberry consented to a search is a question of fact.

(Resp't's Answer Ex. 3, at 20-21.) Reasonably construed, Bush's remarks in his response to the no-merit report, as set forth above, constitute a claim that his trial counsel was ineffective for not challenging the legality of the search.

Although the court of appeals did not expressly address this Fourth Amendment aspect of Bush's ineffective assistance of counsel claim in its decision (as it did with respect to certain other claims), the court concluded its decision by stating: "Our independent review of the record satisfies us that there are

11

no other issues of potential merit that could be presented in postconviction or appellate proceedings." (Resp't's Answer Ex. 4, at 5.) Thus, the question that must be answered is whether such a statement by the court of appeals amounts to an "adjudicat[ion] on the merits" of such claim, thereby calling into play the deferential review standard of AEDPA, as set forth in 28 U.S.C. § 2254(d).

The respondent notes in his brief that

> there is some uncertainty about the standard of review for summary dispositions due to a pending United States Supreme Court case, *Harrington v. Richter*, 130 S. Ct. 1506 (2010), *on writ of certiorari from* 578 F.3d 944. One of the issues presented in *Harrington* is whether "AEDPA deference appl[ies] to a state court's summary disposition of a claim, including a claim under *Strickland v. Washington*, 466 U.S. 668 (1984)."

(Resp't's Br. 15.)

To the extent there was such uncertainty, it was dispelled on January 19, 2011, when the Supreme Court issued its decision in *Harrington*. In *Harrington*, the Court held that, even when the state court provides no explanation for its decision, the scope of review as set forth in 28 U.S.C. § 2254(d) is nevertheless still applicable on federal habeas corpus review of such state court decision. *Harrington v. Richter*, ___ U.S. ___, No. 09-587, 2011 WL 148587, at *9 (Jan. 19, 2011). Thus, in order for Bush to succeed on this particular claim he must demonstrate that the state court's decision involved "an unreasonable application" of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Bush has not met that burden. Stated another way, Bush has not demonstrated that the state court's rejection of his claim of ineffective assistance of counsel based on counsel's not filing a motion to suppress the evidence found during the search of Bush's home was "an unreasonable application" of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Going right to the heart of the matter, the record does not support Bush's claim that Cora Seaberry

12

did not consent to the search. To be sure, Ms. Seaberry appeared at Bush's sentencing and told the court that she had not consented to the search, that she had not shown the gun to the police and that the police had tricked her. But this was an <u>unsworn assertion</u> that ran directly counter to the <u>sworn testimony</u> of several police officers that she did in fact consent to the search and that she did in fact show them the gun. Moreover, at Bush's sentencing the trial court expressly rejected Ms. Seaberry's unsworn statement, stating after hearing from her that she did in fact give the police permission to search.

In the face of such grossly imbalanced "evidence", it certainly cannot be said that Bush's counsel was constitutionally ineffective for not having filed a motion to suppress. Indeed, the trial court rejected Ms. Seaberry's statement. This rejection makes clear that any such motion (had it been filed) would have been denied. And a lawyer cannot be deemed ineffective for failing to file what would have amounted to a meritless claim. *See Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir. 1996) ("[F]ailure to raise such a meritless claim could not possibly constitute ineffective assistance of counsel."); *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993) ("The Sixth Amendment does not require counsel . . . to press meritless arguments before a court."); *United States v. Madewell*, 917 F.2d 301, 304 (7th Cir. 1990) ("If a particular trial tactic is clearly destined to prove unsuccessful, then the sixth amendment standard of attorney competence does not require its use.").

Given the foregoing, to the extent that Bush's habeas corpus petition is predicated on the claim that his counsel was ineffective for failing to file a motion to suppress the results of the search, his petition for writ of habeas corpus will be denied.[1]

---

[1] Because Bush's ineffective assistance of counsel claim, to the extent it is predicated on his counsel's not filing a motion to suppress, is being denied, it necessarily follows that Bush's claim that his counsel was ineffective for not trying to show that Bush had "standing" to file such a motion must be also denied.

*B. Failure to Challenge Credibility of Confidential Informant and Failure to Challenge Destruction of Evidence*

Bush claims that his trial counsel was ineffective for not having challenged the credibility of the confidential informant. In his petition Bush asserts that his counsel

> [f]ailed also to challenge credibility of the confidential informant. This would of been [g]ermain (sic) to the case because it would of shown that the C.I. wasn't credible, could of had the drugs on her already, wouldn't of corroborated with the officers testimony and that the C.I. hand delivered the drugs.

(Habeas Pet. 8.)

He further states in his brief:

> In the instant case the defendant asserts that had the trial attorney filed for an in-camera hearing there is a reasonable possibility that the C.I. may not have been registered and would have been open to full prosecution and the actions taken thru by the informant may have been inadmissible. As previously stated the C.I. may have been found not to be credible, or may have cho[sen] not to show up at trial and the case more than likely may have not gone to trial.

(Pet'r's Br. 17.)

All of the arguments presented by Bush in support of this particular claim are wholly speculative. There is nothing in the record to suggest that the testimony from the confidential informant would have been anything but inculpatory towards Bush. Indeed, this is precisely how the court of appeals handled Bush's claim on this point.

> Next, counsel analyzes whether there would be arguable merit arising from the State's failure to present the testimony of the confidential informant who assisted in the original drug buy. Counsel correctly notes that the issue was waived when the defense did not request the informant's testimony. Bush concedes that the issue was waived, but he argues it can be raised in the context of an ineffective-assistance-of-counsel claim. Although we agree with both arguments, we disagree with Bush that there would be any merit to a claim of ineffective assistance of counsel on this issue. To succeed on a claim of ineffective assistance by counsel, a defendant must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Nothing in the record

14

indicates that testimony from the confidential informant would have been helpful to Bush's case. In addition, the State presented sufficient evidence to sustain Bush's conviction on the drug-delivery charge even without the informant's testimony. We are satisfied that Bush cannot establish that counsel's failure to seek the informant's testimony represented deficient performance by counsel or that Bush was prejudiced by counsel's decision in any way.

(Resp't's Answer Ex. 4, at 4.)

As previously stated, in order for a federal habeas court to grant relief, a petitioner must demonstrate that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Bush has not demonstrated either of those grounds for relief. As the state court noted, there is nothing in the record that would support the notion that anything the C.I. had to offer would have been helpful to Bush. Indeed, Bush himself does not know what the C.I. would have said of a helpful nature. He merely claims that, if subpoenaed, the C.I. <u>might</u> not have been credible or <u>might</u> not have shown up at trial.

Thus, to the extent that Bush's habeas corpus petition is predicated on the claim that his counsel was ineffective for failing to subpoena and question the confidential informant (either in court or in camera), his petition for writ of habeas corpus will be denied.

Finally, Bush claims that his counsel was ineffective for failing to challenge the destruction of certain evidence by seeking dismissal of the charges. In his brief presented to this court, Bush argues:

> [T]he officers acted in bad faith when they testified at trial, that they destroyed the prerecorded buy money and the photocopies of the prerecorded buy money before trial, [w]hich, proved that Bush sold drugs to a C.I. . . . . The prerecorded buy money and the photocopies of the prerecorded buy money were germane in proving that a drug sell occurred. Therefore, the defendant's trial attorney's inactions, by not filing a motion to dismiss claim due to destruction of evidence jeopardized the possibility of getting the

15

motion to dismiss for destruction of evidence claim granted, resulting in prejudice to the defendant's . . . case.

(Pet'r's Br. 18-19.)

Similarly, in his brief presented to the Wisconsin Court of Appeals, Bush argued:

> With respect to destruction of the copy of the buy money, the defendant's due process rights are violated if the police acted in bad faith by failing to preserve evidence which is potentially exculpatory. The investigator's knowledge of the potentially useful or potentially exculpatory nature of the evidence is relevant. Mr. Bush contends that the destruction of the evidence interfered with his defense to show that he did not deliver drugs to the informant because he did not have the buy money.
>
> . . . .
>
> Mr. Bush contends that trial counsel's failure to file a motion to dismiss for destruction of the evidence was deficient performance and prejudicial to the defense. After an evidentiary hearing, an argument may be able to persuade the appellate courts to presume prejudice from the destruction of the evidence.

(Resp't's Answer Ex. 3, at 21-22; internal citations omitted.)

The facts that give rise to this claim are summarized in the respondent's brief.

> At trial, law enforcement officers testified about how the buy money found on Bush matched a photocopy of the buy money given to the confidential informant to buy drugs from Bush. Two officers also testified about what happened to the photocopy. One testified on cross-examination that she did not know where the photocopy was, that she gave it to another officer and did not know what happened to it afterwards. Another testified on direct examination that there was no reason to save the photocopy of the buy money and that "[w]e usually shred them every night, because every day there is, they use different money every day." He further testified on cross-examination that he destroyed the photocopy at the end of the night after Bush's arrest by throwing it away or shredding it.

(Resp't's Br. 18–19; internal citations omitted.)

As with the Fourth Amendment claim, the court of appeals did not set forth reasons in its decision for rejecting this particular claim. Instead, it rejected such claim by stating: "Our independent review of the record satisfies us that there are no other issues of potential merit that could be presented in

16

postconviction or appellate proceedings." (Resp't's Answer Ex. 4, at 5.) Nevertheless, in light of the Supreme Court's decision in *Harrington*, in order for Bush to succeed on this claim in his federal habeas petition he must demonstrate that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In *California v. Trombetta*, 467 U.S. 479 (1984), the Supreme Court held that the Constitution requires the government to preserve evidence "that might be expected to play a significant role in the suspect's defense." 467 U.S. at 488. Such evidence must: (1) "possess an exculpatory value that was apparent before the evidence was destroyed;" and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 489. In *Arizona v. Youngblood*, 488 U.S. 51 (1988), the Court held that in cases involving evidence that is only partially exculpatory, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. at 58.

First of all, the testimony of the officer regarding the reason why he discarded the photocopy of the buy money does not suggest any bad faith on his part. To the contrary, such testimony shows that the discarding of the photocopy was standard practice.

Even more importantly, there is nothing to credibly suggest that the photocopy would have constituted exculpatory evidence. To the contrary, two officers testified that the buy money found on Bush and the money on the photocopy matched.

Perhaps it would have been better practice for the police to have retained the photocopy of the buy money. But, that is not the point on which the decision in this federal habeas case turns. Rather, the

17

decision in this federal habeas case turns on the question of whether the state court's decision to reject as meritless Bush's claim that the destruction of the photocopy violated his due process rights either "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Bush has failed to demonstrate either.

Such being the case, to the extent that Bush's habeas corpus petition is predicated on the claim that his counsel was ineffective for failing to seek dismissal of the charges because of the destruction of the photocopy of the buy money, his petition for writ of habeas corpus will be denied.

In conclusion, and for all of the foregoing reasons, Bush's federal habeas corpus petition will be denied and this action will be dismissed.

The recently amended provisions of Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part, as follows:

> a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Under 28 U.S.C. § 2253(c), a district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court of appeals has held that this standard differs only in scope from the certificate of probable cause standard that was previously developed and applied by the courts. *See Herrera v. United States*, 96 F.3d 1010, 1012 (7th Cir. 1996). The *Herrera* court said that "a certificate of probable cause places the *case*

before the court of appeals, but a certificate of appealability must identify each *issue* meeting the 'substantial showing' standard." *Id*. (emphasis added). Thus, for the court to issue a certificate of appealability to Bush, it must identify for the court of appeals the issues that are "debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (emphasis added) (quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980)). This test was reiterated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), *rev'd on other grounds, Miller-El v. Dretke*, 545 U.S. 231 (2005).

> Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

*Id.* at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In my opinion, and for the reasons set forth in this decision denying Bush's habeas corpus petition, none of Bush's claims warrants a certificate of appealability. Put simply, the petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" by demonstrating either that jurists of reason could disagree with this court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Consequently, the court will deny Bush a certificate of appealability. Of course, Bush retains the right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW THEREFORE IT IS ORDERED** that Bush's claims for federal habeas corpus relief be and hereby are **DENIED**;

**IT IS FURTHER ORDERED** that Bush's petition for a writ of habeas corpus be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 7th day of February 2011, at Milwaukee, Wisconsin.

                                **BY THE COURT:**

                                s/ William E. Callahan, Jr.
                                WILLIAM E. CALLAHAN, JR.
                                United States Magistrate Judge